UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 09-23154-CIV-SEITZ/SIMONTON

SANDRA RINKER,

        Plaintiff,

v.

CARNIVAL CORPORATION, *et al.*,

        Defendants.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART CARNIVAL'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER is before the Court on Defendant Carnival Corporation's Motion for Summary Judgment [DE-207]. This action arises from injuries sustained by Plaintiff, Sandra Rinker, after she developed meningitis aboard Defendant Carnival Corp.'s ship and was provided with medical care by the ship-board doctor and nurses. Plaintiff's six count Second Amended Complaint alleges three claims against Defendant Carnival Corp. (Carnival): (1) negligence; (2)[1] apparent agency for the acts of Susan Law, the ship's nurse; and (3) apparent agency for the acts of Defendant Ramambhai Patel, the ship's doctor. Because there is no evidence that Plaintiff detrimentally relied on any representations made by Carnival, the motion for summary judgment is granted as to both apparent agency claims. The motion is also granted as to all of Plaintiff's negligence claims except for Plaintiff's negligence claim based on Carnival's failure to timely evacuate Plaintiff from the ship.

---

[1] The counts are actually numbered I, III, and IV, respectively. For some unknown reason, and despite the potential for confusion, Plaintiff failed to renumber the counts when she filed her Second Amended Complaint.

## I. Material Facts[2]

Plaintiff and her husband were passengers aboard Carnival's ship Spirit, in November 2008, when she became ill on the last night of the cruise. Plaintiff sought treatment in the ship's infirmary. Ultimately, Plaintiff was taken from the ship by ambulance to a hospital where she was diagnosed with meningitis, bacteremia, and osteomyelitis. As a result of her illness, Plaintiff was left profoundly deaf and underwent cochlear implants in both ears. Plaintiff was also left with neurological problems which make her unable to stand or walk without assistance. Consequently, Plaintiff has sued Carnival for negligence and for the negligence of the ship's nurse and ship's doctor under a theory of apparent agency.

*Plaintiff's Illness and Treatment While Aboard the Spirit*

Between 2 and 2:30 a.m. on the last night of the cruise, Plaintiff awoke with a terrible headache. (J. Rinker Dep.[3] 21:15-22:1.) Shortly after, Plaintiff's husband called the Purser's office and requested that the doctor come to the cabin to look at Plaintiff. (*Id.* at 24:8-13.) The Purser's office connected Plaintiff's husband to the infirmary and the infirmary instructed Plaintiff and her husband to come to the infirmary. (*Id.* at 24:14-25.) However, the nurse at the infirmary first instructed Plaintiff to take some Tylenol, which Plaintiff's husband obtained from the Purser's office. (*Id.* at 25:24-26:19.) When the Tylenol did not help, Plaintiff's husband called the infirmary again, around 3:15 a.m., and asked for the doctor to come to the Rinkers'

---

[2]The facts noted below are taken from the parties' respective undisputed statements of facts, DE-207, pp. 2-7 and DE-246, pp. 6-21, unless otherwise noted. The Court has considered the facts in the light most favorable to Plaintiff.

[3]J. Rinker Dep. refers to the deposition of James Rinker, Plaintiff's husband, filed at DE-246-2.

cabin. (*Id.* at 27:5-15.) The nurse informed Plaintiff's husband that the doctor would not come to the cabin for this sort of thing and that Plaintiff should come to the infirmary. (*Id.* at 27:16-20.) Plaintiff and her husband went to the infirmary and arrived around 3:30 a.m. (*Id.* at 27:21-28:1.) On the way to the infirmary, Plaintiff became dizzy and lost her balance and, in the infirmary, Plaintiff appeared confused when the nurse tried to speak with her. (*Id.* at 28:9-16; 31:1-7.) At the infirmary, the nurse gave Plaintiff an injection for pain. Neither Plaintiff nor her husband objected to the injection. (*Id.* at 31:25.) After receiving the injection, Plaintiff vomited. (*Id.* at 65:64:24-65:2.)

At approximately 5:00 a.m., Plaintiff and her husband left the infirmary to return to their cabin. (*Id.* at 38:8-12.) When Plaintiff left the infirmary, the nurse told Plaintiff that she did not need to see a doctor and that if her conditioned worsened, she could go to one of the local hospitals after the ship was in port.[4] (*Id.* at 39:1-6.) Plaintiff was not instructed to return to the infirmary. (*Id.* at 63:5-12.) In order to get Plaintiff back to their cabin, Plaintiff's husband borrowed a wheel chair from the infirmary. (*Id.* at 40:3-7.) After Plaintiff returned to the cabin, she began vomiting. (*Id.* at 42:10-18.) Plaintiff's pain also intensified, she was disoriented, and she was acting confused. (*Id.* at 42:10-11.)

At approximately 8:00 a.m., Plaintiff's husband called the Purser's office and told them that Plaintiff was in severe pain, she had been vomiting, she was disoriented, and she needed paramedics and an ambulance to take her to a hospital. (*Id.* at 42:24-437.) The Purser's office told Plaintiff's husband that a request for an ambulance would have to be made through the

---

[4]The ship arrived in the Port of San Diego, California around 7:00 a.m. San Diego is the ship's home port.

3

infirmary. (*Id.* at 43:12-16.) Plaintiff's husband then contacted the infirmary to request an ambulance and to request that the doctor come to the cabin to treat Plaintiff. (*Id.* at 43:18-25; 44:19-2.) Plaintiff's husband was informed that the doctor would not come to the cabin and that Plaintiff would have to come back to the infirmary. (*Id.* at 45:3-5.) Plaintiff's husband informed the infirmary that he would need help getting Plaintiff back there. (*Id.* at 45:12-14.) The infirmary directed Plaintiff's husband to the Purser's office for help. (*Id.* at 45:15-17.) Plaintiff's husband then called the Purser's office and requested help getting her to the infirmary. (*Id.* at 46:9-16.) After two more phone calls to the Purser's officer and approximately an hour after Plaintiff's husband first called for an ambulance, he was finally able to obtain a wheel chair and help getting Plaintiff in the wheel chair and down to the infirmary. (*Id.* at 46:18-49:25.)

Upon arrival at the infirmary, Plaintiff's husband explained that he was the one who had requested the paramedics and ambulance. (*Id.* at 51:6-9.) In the infirmary, Plaintiff and her husband saw the doctor who began asking questions about Plaintiff's condition. (*Id.* at 54:3-14.) At some point, Plaintiff was given another injection. (*Id.* at 56:19-23.) While Plaintiff was in the infirmary, she began having a difficult time hearing. (*Id.* at 58:21-23; 59:6-22.) Around 11:30 a.m., more than two hours after Plaintiff and her husband had returned to the infirmary, paramedics arrived in the infirmary to get Plaintiff. (*Id.* at 56:1-4.) When the paramedics arrived, Plaintiff was not responsive to their questions. (*Id.* at 68:13-17.) Plaintiff was transported to a hospital where she was diagnosed with meningitis, bacteremia, and osteomyelitis. As a result of her illness, Plaintiff was rendered profoundly deaf and suffers from severe neurological problems that make her unable to walk or stand without assistance. (J. Rinker Aff. at ¶4.) While Plaintiff was not evacuated from the ship until hours after it arrived in

port, two other passengers were evacuated from the ship for medical reasons at approximately 7:15 a.m. (Plaintiff's Ex. 9.)

*Carnival's Representations to Plaintiff and Her Husband*

Prior to boarding Plaintiff received the terms and conditions of her Ticket Contract. (Romero Aff.[5] at ¶6.) While Plaintiff disputes that she was provided with the terms and conditions, someone, on behalf of Plaintiff, completed her booking online and acknowledged Plaintiff's acceptance of the terms and conditions. (Romero Aff. at ¶7.) The terms and conditions of the Ticket Contract contain the following language:

> TICKET CONTRACT
> IMPORTANT NOTICE TO GUESTS THIS DOCUMENT IS A LEGALLY BINDING CONTRACT ISSUED BY CARNIVAL CRUISE LINES TO, AND ACCEPTED BY, GUEST SUBJECT TO THE IMPORTANT TERMS AND CONDITIONS APPEARING BELOW. NOTICE: THE ATTENTION OF GUEST IS ESPECIALLY DIRECTED TO CLAUSES 1, 4, AND 10 THROUGH 13, WHICH CONTAIN IMPORTANT LIMITATIONS ON THE RIGHTS OF GUESTS TO ASSERT CLAIMS AGAINST CARNIVAL CRUISE LINES, THE VESSEL, THEIR AGENTS AND EMPLOYEES, AND OTHERS, INCLUDING FORUM SELECTION, ARBITRATION AND WAIVER OF JURY TRIAL FOR CERTAIN CLAIMS.
> * * *
> 10. INDEPENDENT CONTRACTORS, SHORE EXCURSIONS AND OTHER SERVICES
> (a) Guest acknowledges that all Shore excursions/tours (whether conducted in the water, on land or by air), airline flights and ground transportation, as well as the ship's physician, and on board concessions . . . are either operated by or are independent contractors. Even though Carnival shall be entitled to collect a fee and earn a profit from the ticketing or sale of such services by such persons or entities, Carnival neither supervises nor controls their actions, nor makes any representation either express or implied as to their suitability. Carnival, in arranging for the services called for by the physician or nurse . . . does so only as a convenience for the Guest and Guests are free to use or not use these services. Guest agrees that Carnival assumes no responsibility, does not guarantee performance and in no event shall be liable for any negligent or intentional acts or omissions, loss, damage, injury . . . in connection with said services. Guests use

---

[5] Romero Aff. refers to the Affidavit of Mario Romero, a claims representative in Carnival's Loss Prevention Deaprtment, filed at DE- 207-1.

5

> the services of all independent contractors at the Guest's sole risk. Independent contractors are entitled to make a proper charge for any service performed with respect to a Guest.

(Romero Aff., Ex. 1.) While Plaintiff did not complete the online booking, she did receive a packet of information about the cruise, which she "glanced through." (Plaintiff Dep.[6] 105:3-16.) Plaintiff remembers reading that the ship had medical services onboard but does not remember what other information about the medical services were included in the packet of information. (*Id.* at 106:3-20.)

Once onboard the ship, on the second night of the cruise, Plaintiff and her husband attended the Captain's Party. (J. Rinker Aff. at ¶7.) At the Captain's Party, the Captain introduced the ship's officers, including the ship's doctor, Dr. Patel. (*Id.* at ¶¶7-8.) Dr. Patel wore the same uniform and same Carnival name tag as the other ship's officers. (*Id.* at ¶8.) When Plaintiff and her husband went to the infirmary, Dr. Patel and Nurse Dormehl were wearing the same uniform and name tags as Plaintiff and her husband had seen other officers wearing during the cruise. (*Id.* at ¶11.) At the infirmary, Plaintiff and her husband also observed Nurse Law wearing the same name tag as the other ship's officers. (*Id.* at ¶13.) In the infirmary, Plaintiff's husband was given a form to fill out which had the Carnival logo on it and said "MS Carnival Spirit – Medical Department." (*Id.* at ¶13.) The form, which Plaintiff's husband filled out and Plaintiff signed, stated, "I AUTHORIZE MEDICAL TREATMENT AND FOR ALL EXPENSES TO BE CHARGES TO MY SAIL & SIGN ACCOUNT." (*Id.*) The Sail and Sign account was an account Plaintiff and her husband had established with Carnival. (*Id.*) Nowhere on the form, in the infirmary, or elsewhere on the ship were there indications that the

---

[6]Plaintiff Dep. refers to the deposition of Plaintiff, filed at DE-246-6, 246-7, and 246-8.

6

ship's medical staff were independent of Carnival. (*Id.* at ¶¶12-14, 17.) As a result, Plaintiff and her husband believed that the ship's medical staff were employees of Carnival. (*Id.* at ¶18.)

According to Plaintiff's husband, if he had known that the ship's medical staff was independent of Carnival, he "would have gotten a hold of the ship's Captain and would have requested him to get my wife off of the ship." (*Id.* at ¶19; J. Rinker Dep. at 235:61-4.) However, Plaintiff's husband also testified that he would have taken his wife to the infirmary regardless of whether or not he knew that the medical staff were not Carnival employees because his wife needed treatment. (J. Rinker Dep. at 202:10-15.) Plaintiff's husband took her to the infirmary solely because Plaintiff needed medical care. (*Id.* at 228:9-14; 229:20-230:11; 238:3-19.)

*Carnival's Hiring Process for the Ship's Medical Staff*

When Carnival hires medical personnel, it undertakes an investigation into the qualifications of the medical personnel to determine if they are fit to serve onboard Carnival's ships. (Bradberry Aff.[7] at ¶6.) As part of that process, Carnival confirms that each applicant has an active medical license, Carnival interviews each applicant regarding their qualifications and their interpersonal skills, and Carnival requires each applicant to provide three professional references which are verified by Carnival's medical department. (*Id.*) As to the medical staff involved in Plaintiff's treatment, Dr. Patel was licensed in South Africa, Nurse Law was licensed in Australia, and Nurse Dormehl was licensed in South Africa. (*Id.* at ¶7.) Carnival also verified the references provided by Patel, Law, and Dormehl. (*Id.*) During Carnival's qualification

---

[7]Bradberry Aff. refers to the affidavit of John Bradberry, M.D., Carnival's Medical Director, which is filed at DE-207-5.

7

process, nothing was learned that would indicate that Patel, Law, or Dormehl were not qualified to serve onboard a Carnival ship. (*Id.* at ¶8.)

## II. Summary Judgment Standard

Summary judgment is appropriate when "the pleadings . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 991 (11th Cir. 2001). Once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting* Fed. R. Civ. P. 56(e)). The Court must view the record and all factual inferences therefrom in the light most favorable to the non-moving party and decide whether "'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (*quoting Anderson*, 477 U.S. at 251-52)).

In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A mere "scintilla" of evidence supporting the opposing party's position will not suffice; instead, there must be a sufficient showing that the jury could reasonably find for that party. *Anderson*, 477 U.S. at 252; *see also Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

## III. Discussion

Carnival moves for summary judgment on all claims against it. Carnival seeks summary judgment on the negligence count, arguing that Plaintiff has either failed to present evidence to support the claim or failed to establish that Carnival had a duty to Plaintiff. Additionally, Carnival argues that Plaintiff has failed to establish causation for any of the negligence claims. Carnival also seeks summary judgment on the apparent agency counts arguing that such a claim is not recognized in this Circuit and also arguing that Plaintiff has failed to establish the elements of such a claim.

### A. Negligence

Count I of the Second Amended Complaint is based on negligence. The Second Amended Complaint sets forth nine ways in which Carnival was allegedly negligent.[8] Carnival seeks summary judgment as to all nine. Plaintiff has failed to address Carnival's arguments as to several of Plaintiff's bases for her negligence claim, specifically Plaintiff has failed to address Carnival's motion for summary judgment as to the claims raised in paragraphs 20(b), (f), (g), and (h). Plaintiff's failure to address these issues in her response is grounds for finding that the

---

[8] The nine types of negligence are set out in paragraphs 20(a)-(i) of the Second Amended Complaint. They are: (a) failure to timely evacuate Plaintiff; (b) failure to provide Plaintiff with prompt, proper medical care; (c) failure to hire properly qualified ship's doctors and nurses; (d) failure to disclose to passengers that the ship's doctors and nurses were not properly qualified; (e) negligent reliance on the medical opinions of the ship's doctor; (f) negligent administration of medications; (g) failure to use reasonable care to provide and maintain an adequate ship's medical facility; (h) failure to provide medical staff with reasonable hours of employment; and (i) failure to have an adequate number of medical employees. Plaintiff has abandoned the claims in paragraphs (b), (f), (g) and (h). The Court addresses paragraph (a) in section III.A.1., paragraphs (c), (d), and (e) in section III.A.2., and paragraph (i) in section III.A.3.

claims have been abandoned.[9] *See Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) and cases cited therein. Accordingly, summary judgment is appropriate on these claims. As to the remaining claims, Carnival argues that Plaintiff cannot establish that Carnival breached any duty to her and, even if it did, Plaintiff cannot establish causation.

### 1. Negligence Based on Failure to Timely Evacuate Plaintiff

Carnival argues that it is entitled to summary judgment on Plaintiff's claim, set out in paragraph 20(a) of the Second Amended Complaint, that Carnival was negligent in failing to timely evacuate Plaintiff. Carnival asserts that once Plaintiff placed herself in the care of the ship's medical personnel, Carnival did not have the authority to overrule the doctor's decision and there is no evidence that the doctor recommended that Plaintiff be evacuated any earlier than she was. However, at 8:00 a.m. when Plaintiff's husband explicitly asked the ship's Purser to have Plaintiff evacuated, Plaintiff was not in the care of the ship's medical personnel. Plaintiff had been released from their care during the night and only re-entered their care after the Purser, instead of calling an ambulance, referred Plaintiff to the ship's medical personnel. Thus, Plaintiff argues that Carnival breached its "duty to exercise reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances." *See*

---

[9]Even if Plaintiff has not abandoned these claims, there is no evidence to support them or no duty that Carnival owed. There is no evidence in the record that Carnival administered any medications to Plaintiff, as alleged in paragraph 20(f); no evidence that the medical staff worked unreasonable hours, as alleged in paragraph 20(h); and no evidence that Carnival failed to provide and maintain an adequate ship's medical facility, as alleged in paragraph 20(g). Carnival did not have a duty to provide prompt, proper and adequate medical care, as alleged in paragraph 20(b). Thus, even if Plaintiff has not abandoned these claims, summary judgment would be appropriate.

*Barbetta v. S/S Bermuda Star*, 848 F.2d 1364, 1371 (5th Cir. 1988).

Carnival relies on *Wajnstat v. Oceania Cruises, Inc.*, 2011 WL 465340, *3 (S.D. Fla. Feb. 4, 2011), for the proposition that once Plaintiff placed herself in the care of Carnival's medical staff, the ship's master could not have made an independent decision to evacuate Plaintiff because a ship's master does not have the authority to overrule a ship's doctor's medical decisions. However, in *Wajnstat* the court specifically noted that neither the Plaintiff nor his doctor requested that Plaintiff be evacuated earlier than Plaintiff was evacuated. That is not the case here. Plaintiff's husband explicitly requested that Plaintiff be evacuated hours before she was actually evacuated. Furthermore, at the time Plaintiff's husband requested the ambulance at 8:00 a.m., it would appear that Plaintiff was no longer under the care of the medical staff; Plaintiff had been sent back to her cabin at approximately 5:00 a.m. and there is no evidence that she was instructed to return to the infirmary or otherwise follow-up with the medical staff. Thus, *Wajnstat* is not applicable. Thus, the question of fact for the jury to determine is whether the Purser's response to Plaintiff's husband's request for an ambulance constituted "reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances." Consequently, there is a genuine issue of material fact as to whether Carnival's failure to comply with Plaintiff's husband's request for evacuation was reasonable under the circumstances, especially given that two other passengers were evacuated for medical reasons shortly after the ship arrived in port.

> *2. Negligent Hiring, Negligence Based on Carnival's Failure to Notify Passengers that the Ship's Doctors and Nurses Were Not Properly Qualified, and Negligent Reliance on the Medical Opinions of an Improperly Qualified Ship's Doctor*

Plaintiff's underlying basis for all three of these negligence claims is that Carnival did not hire properly qualified ship's doctors and nurses. Carnival moves for summary judgment on this claim arguing that there is no evidence that Carnival did not use proper care in selecting its medical staff. Carnival further argues that determining whether the medical staff were properly qualified requires an expert witness which Plaintiff did not proffer. In response, Plaintiff has proffered the Affidavit of one of her expert witnesses, Dr. Gerald E. Stopczynski. However, as a result of a separate motion filed by Carnival, the Court has stricken the Affidavit [DE-281]. Thus, Plaintiff has failed to present any evidence that Patel or the nurses were not properly qualified. Accordingly, Plaintiff has not met her burden to show "that specific facts exist demonstrating a genuine issue for trial" regarding Patel's or the nurses qualifications. Thus, if there is no issue as to whether Patel and the nurses were properly qualified, there is no basis for a negligent hiring claim, a negligent failure to notify claim, or a negligent reliance claim. Accordingly, summary judgment is granted as to these the claims set out in paragraphs 20(c), (d), and (e) of the Second Amended Complaint.

> *3. Negligence Based on Carnival's Failure to Have an Adequate Number of Medical Employees*

Carnival moves for summary judgment on this claim, set out in paragraph 20(i) of the Second Amended Complaint, because it has no duty to maintain a certain number of medical personnel onboard. Further, Carnival argues that Plaintiff has failed to present any evidence that Carnival did not have an adequate number of medical staff onboard. Plaintiff has not responded

12

to Carnival's argument that it had no duty to have a certain number of medical personnel onboard. As this Court has previously noted, a carrier does not have a duty to furnish a doctor for its passengers' use. *See Barbetta*, 848 F.2d at 1371. However, if a carrier chooses to provide a doctor, it must provide one that is competent and qualified. *Id.* Carnival has no other duty regarding the provision of medical care. Thus, if Carnival did not have a duty to furnish any doctor, it could not have a duty to furnish "an adequate number" of doctors and nurses. Accordingly, Carnival is entitled to summary judgment on this claim.

### 4. *Causation*

Carnival also argues that is entitled to summary judgment on all of Plaintiff's negligence claims because Plaintiff has not established that Carnival's alleged failure to timely evacuate her from the ship resulted in Plaintiff's hearing loss and neurological problems. Carnival asserts that Plaintiff's expert, Dr. Lipman could not give an opinion within a reasonable degree of medical probability because Dr. Lipman testified that it was possible that Plaintiff's injuries could have been avoided had she received treatment sooner, not that it was more likely than not. Plaintiff responds by citing to particular portions of Dr. Lipman's report and deposition. *See* DE-246, pp. 14-15 citing Lippman Dep. at 99-102, 113. While Dr. Lipman did not always use the words "more likely than not," he did use the term "very likely." "Very likely" denotes significantly more than a mere possibility and would imply that it is more likely than not. Thus, the Court finds that a genuine issue of material fact exists as to causation. Consequently, Carnival is not entitled to summary judgment as to the issue of causation.

### B. *Summary Judgment is Granted on Plaintiff's Apparent Agency Claims*

Carnival first seeks summary judgment on Plaintiff's apparent agency claims, Counts III

and IV,[10] arguing that such claims are contrary to well-settled law and citing *Barbetta v. S/S Bermuda Star*, 848 F.2d 1364 (5th Cir. 1988). The Court has previously ruled that claims based on apparent agency are permissible under controlling law. *See* DE-38 at 7. The Court will not address this legal argument again.[11] However, Carnival also seeks summary judgment on Plaintiff's apparent agency claims because Plaintiff cannot establish the elements of an apparent agency claim.

Apparent agency is established when: "1) the alleged principal makes some sort of manifestation causing a third party to believe that the alleged agent had authority to act for the benefit of the principal, 2) that such belief was reasonable and 3) that the claimant reasonably acted on such belief to his detriment." *Doonan v. Carnival Corp.*, 404 F. Supp. 2d 1367, 1371 (S.D. Fla. 2005). Carnival asserts that Plaintiff has failed to present evidence to establish any of these elements.

---

[10]Count III alleges apparent agency regarding Nurse Law and Count IV alleges the same legal claim as to Dr. Patel.

[11]While the Court understands Carnival's motivation for repeatedly raising this argument, the Court does not agree with Carnival's arguments that apparent agency is simply a form of respondeat superior liability and such a claim is barred by the holding in *Barbetta*. While both respondeat superior and apparent agency are forms of vicarious liability, respondeat superior liability and apparent agency liability are not the same thing. Respondeat superior liability is based on the existence of an employer/employee relationship and the principle that an employer should be liable for the wrongs of its employees done in the scope of their employment. Thus, the liability arises from the nature of the relationship between the employer and employee. Apparent agency liability, on the other hand, arises when there is not an employer/employee relationship. It arises as a result of manifestations that the apparent principal makes to the injured third party about the relationship between the apparent principal and the apparent agent, regardless of the nature of the actual relationship. Thus, the liability arises from the relationship between the apparent principal and the injured third party. As a result of the differences between apparent agency liability and respondeat superior liability, the elements of these two claims are different. Consequently, apparent agency is not simply a form of respondeat superior agency.

Contrary to Carnival's assertions, Plaintiff has presented evidence of manifestations made by Carnival which could have caused Plaintiff to believe that Dr. Patel and Nurse Law were agents of Carnival. These include introducing the doctor to passengers as one of the ship's officers, requiring the doctor and the nurse wear Carnival uniforms and name tags, and having the words "MS Carnival Spirit – Medical Department" on forms filled out by Plaintiff and her husband. Based on these representations, at a minimum, a genuine issue of material fact exists as to whether Carnival made manifestations causing a third party to believe that Dr. Patel and Nurse Law had authority to act for Carnival.

A genuine issue of material fact also exists as to whether reliance on Carnival's manifestations was reasonable. Carnival asserts that because the ticket contained language clearly indicating that the ship's medical personnel were not Carnival's agents, reliance on the manifestations was unreasonable. Ordinarily, reasonableness is a question of fact for the jury. Under the circumstances of this case, the ticket language is something the jury should consider but it is not dispositive of the issue as a matter of law.

While questions of fact for the jury exist as to the first two elements, Plaintiff has not presented any evidence as to the third element – detrimental reliance. Plaintiff asserts that her husband, as her health care proxy relied on Carnival's representations. Even if the Court were to accept Plaintiff's argument that her husband was her health care proxy, Plaintiff cannot point to any evidence that he detrimentally relied on Carnival's representations about the doctor and nurses.

In order to establish reliance, Plaintiff relies on an affidavit filed by her husband, which was executed on November 19, 2011, after Carnival had filed its motion for summary judgment.

15

In the affidavit, Plaintiff's husband states:

> If I had known that the ship's doctor and medical staff were independent of Carnival and were not acting under the authority of Carnival when providing medical care to passengers, I would have gotten a hold of the ship's Captain and would have requested him to get my wife off the ship . . . As such, I detrimentally relied on the foregoing representations which led me to believe that the ship's doctor and medical staff were being supervised by Carnival and were acting under the authority of Carnival when providing medical care to passengers, including my wife.

DE-246, ¶¶19-20. Interestingly, Plaintiff's husband does not state that, had he known the doctor and nurses were independent contractors, he would not have sought their medical help for his wife. Thus, it is not clear how he relied. Furthermore, the implication that he would have not sought their medical help is clearly contradicted by his deposition testimony, where he stated that, regardless of the employment relationship between Carnival and the medical personnel, he would have sought medical help for his wife from the ship's medical personnel. Finally, "[a]n affidavit may . . . be disregarded as a sham when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact ... [and that party attempts] thereafter [to] create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Tippens v. Celotex, Corp.*, 805 F.2d 949, 954 (11th Cir. 1986) (internal quotations omitted and brackets in original). Thus, no genuine issue of material fact exists as to the last element necessary for an apparent agency claim – reasonable, detrimental reliance. Accordingly, Carnival is entitled to summary judgment on Plaintiff's claims based on apparent agency.

Upon consideration, it is hereby

ORDERED THAT Defendant Carnival Corporation's Motion for Summary Judgment [DE-207] is GRANTED in part and DENIED in part:

a) The Motion is GRANTED in part and DENIED in part as to Count I. The motion is denied as to Plaintiff's claim that Carnival was negligent in failing to timely evacuate her and granted as to all other negligence claims.

b) The motion is GRANTED as to Counts III and IV.

DONE AND ORDERED in Miami, Florida, this 21st day of December, 2011.

*[signature]*
PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc: All counsel of record